IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| ANTHONY JAFETH ESCOBAR FLORES,<br><br>*Petitioner*,<br><br>v.<br><br>PAM BONDI, in her official capacity as Attorney General of the United States; ALEXANDER SANCHEZ, in his official capacity as Co-Associate Warden of the IAH Secure Adult Detention Center; TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; BRET BRADFORD, in his official capacity as Field Office Director of ICE Enforcement and Removal Operations Houston Field Office; and KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security,<br><br>*Respondents*. | CIVIL ACTION NO. 9:26-CV-00014<br>JUDGE MICHAEL J. TRUNCALE |

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Anthony Jafeth Escobar Flores (Escobar)'s Petition for Writ of Habeas Corpus (the Petition) [Dkt. 1]. For the following reasons, the Petition is **DENIED**.

### I. BACKGROUND

Petitioner Anthony Jafeth Escobar Flores is a Honduran national. [Dkt. 1 at ¶ 1]. On October 5, 2025, United States Immigration and Customs Enforcement (ICE) detained Escobar. *Id.* at ¶ 2.

On January 9, 2026, Escobar brought a habeas corpus petition. [Dkt. 1]. He claims that his detention violates the Immigration and Naturalization Act (INA),[1] federal regulations, and the Fifth Amendment to the United States Constitution. *Id.* at 12–17.

---

[1] 8 U.S.C. § 1101 et seq.

## II. LEGAL STANDARD

Habeas petitions under 28 U.S.C. § 2241 serve the "sole function" of challenging the legal basis for the petitioner's detention. *Pierre v. U.S.*, 525 F.2d 933, 935–36 (5th Cir. 1976). Section 2241 entitles five classes of prisoners to habeas relief, including prisoners held "in violation of the Constitution or laws, or treaties of the United States." 28 U.S.C. § 2241(c)(3). In a habeas proceeding, the petitioner bears the burden of proof and must demonstrate by a preponderance of the evidence that he is being held unlawfully. *Villanueva v. Tate*, No. H-25-3364, 2025 WL 2774610 at *4 (S.D. Tex. Sep. 26, 2025).

## III. DISCUSSION

### A. INA

Escobar first claims to be unlawfully detained under 8 U.S.C. § 1225(b)(2)(A), which provides for the mandatory detention of "applicants for admission" who are not deemed "clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A). According to Escobar, aliens who, like him, entered the United States without inspection years ago, are not "applicants for admission" under section 1225(b)(2)(A). Instead, Escobar argues that 8 U.S.C. § 1226(a) applies to cases like his. Under section 1226(a), an alien "may be arrested and detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General has discretion to release or "continue to detain" aliens detained pursuant to section 1226(a). *See id.* § 1226(a)(1)–(2).

Even if Escobar is correct, and section 1225(b) is inapplicable, section 1226(a) nonetheless permits his continued detention during removal proceedings. *See id.* Section 1226(a) provides that "an alien may be arrested and detained" pending removal proceedings. § 1226(a). The Attorney General "may continue to detain the alien" or decide to release the alien on custody-redetermination. § 1226(a)(1)–(2). Section 1226(a) mentions nothing about custody redeterminations by immigration judges. *See id.* Here, the Attorney General, using her discretion under section 1226(a), has chosen to detain Escobar pending his removal proceedings. Hence, Escobar is lawfully detained under the INA,

whether or not he receives a custody-redetermination hearing. *See id.*

### B. Federal Regulations

Escobar next argues that, even if the INA itself does not entitle him to a bond hearing, its accompanying regulations do. [Dkt. 1 at 12]. Escobar's interpretation of these regulations is dubious. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Nothing in the text of the regulations suggests that bond hearings are absolutely required. *See id.* §§ 236.1(d)(1), 1236.1(d)(1). The regulations state only that an alien in removal proceedings "may request" a bond hearing before he is ordered removed. *Id.* §§ 236.1(d)(1), 1236.1(d)(1). They are silent as to when, if ever, immigration judges are required to grant bond-hearing requests. *See id.* §§ 236.1(d)(1), 1236.1(d)(1). Because the regulations use no mandatory language and lay out no parameters for granting or denying bond-hearing requests, the Court does not read them to strictly require bond hearings. *See id.* §§ 236.1(d)(1), 1236.1(d)(1). This reading is consistent with the discretionary nature of section 1226(a), which permits the Attorney General to "continue to detain" arrested aliens instead of granting them bond. *See* 8 U.S.C. § 1226(a)(1)–(2). Immigration judges, who "act as the Attorney General's delegates in the cases that come before them," presumably enjoy the same discretion and can exercise it by denying bond-hearing requests. *See* 8 C.F.R. § 1003.11(a). Accordingly, the Government did not violate federal regulations by denying Escobar a bond hearing. *See id.* §§ 236.1(d)(1), 1236.1(d)(1).

### C. Due Process

Escobar also argues that the Government violated procedural due process by failing to provide him with a bond hearing before an immigration judge. [Dkt. 1 at 20]. Even if Escobar is correct, he still is not entitled to habeas relief. *See Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997) (Smith, J.). Escobar's due-process argument is not based on the illegality of his confinement itself, but on the illegality of the Government's failure to provide him with a bond hearing. *See* [Dkt. 1 at 20–21]. Escobar's unlawful entry and continued unlawful presence in the United States are undisputedly valid reasons for confining him during removal proceedings. *See* 8 U.S.C. §§ 1182(a)(6)(A)(1),

1227(a)(1)(A). Accordingly, Escobar's due-process claim is ill-suited for a habeas proceeding, which is "not available to review questions unrelated to the *cause of detention*."[2] *See Pierre*, 525 F.2d at 935 (emphasis added).

Due-process challenges to procedures like bond hearings, which "affect[] the timing of [a prisoner's] release from custody," must normally be brought via a civil-rights action, not a habeas proceeding. *See Carson*, 112 F.3d at 820–21. A habeas petition is the proper device for raising such a challenge only when the challenged procedure would result in the petitioner's automatic release from custody if adequately performed. *See id.*

Here, a properly conducted bond hearing would not invariably result in Escobar's being granted bond. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Even if an alien receives a bond hearing, the presiding immigration judge may order the alien's continued detention. *Id.* §§ 236.1(d)(1), 1236.1(d)(1). Because a bond hearing would not have guaranteed Escobar's release from custody, his failure to receive one does not entitle him to habeas relief. *See Carson*, 112 F.3d at 820–21. If a violation of federal law occurred, it was not by way of Escobar's detention, but the Government's failure to provide him with a bond hearing once he was already detained. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Accordingly, a habeas proceeding is not the proper arena for Escobar to raise a due-process challenge to the Government's failure to afford him a bond hearing. *See Carson*, 112 F.3d at 820–21.

### D. Administrative Procedure Act

Escobar's APA claims are not properly raised in a habeas petition because they are "unrelated to the cause of [his] detention." *See Pierre*, 525 F.2d at 935–36. Accordingly, Escobar must bring his APA claims in a separate, non-habeas proceeding. *See Carson*, 112 F.3d at 820–21; *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).

---

[2] *See also Wilkinson v. Dotson*, 544 U.S. 74, 86 (2005) (Scalia, J., concurring).

## IV. CONCLUSION

It is therefore **ORDERED** that Escobar's Petition for Writ of Habeas Corpus [Dkt. 1] is hereby **DENIED**. All pending motions are hereby **DENIED AS MOOT**. This constitutes a **FINAL JUDGMENT** and the Clerk is **INSTRUCTED** to close this matter.

**SIGNED this 6th day of March, 2026.**

_____
Michael J. Truncale
United States District Judge